Thomas S. LOADHOLTZ, Plaintiff,

v.

Alan B. FIELDS, Jr., and Neil
Thorn, Defendants.

No. 74–587 Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 7, 1975.

William L. Townsend, Jr., Palatka,
Fla., for plaintiff.

Alan B. Fields, Jr., Palatka, Fla., E.
Robert Williams, Jacksonville, Fla., for
defendant Fields.

Joe C. Miller, II, Palatka, Fla., for de-
fendant Thorn.

Parker D. Thomson, Sanford L. Bohrer, Robert T. Wright, Jr., of Paul & Thomson, Miami, Fla., for Clarence Arnold Prevatt.

## ORDER AND MEMORANDUM OPINION

CHARLES R. SCOTT, District Judge.

This cause came before the Court with respect to the plaintiff's motion to compel discovery, filed herein October 25, 1974. At issue herein are First Amendment considerations of profound dimension.

Clarence Arnold (Butch) Prevatt is a reporter for the Palatka Daily News, a newspaper published in Putnam County, Florida. On September 24, 1974, an article under the byline of "Butch" Prevatt was published in the Palatka Daily News which was entitled "Harassment, Intimidation Cited in Arrest of Couple." On October 14, 1974, Mr. Prevatt was duly served with a subpoena to testify and produce certain documents on October 23, 1974, at a deposition. On October 23, 1974, at the deposition, plaintiff's attorney was served with an "Objection to Production of Documents Pursuant to Subpoena Duces Tecum." In addition to refusing to produce the requested documents, Mr. Prevatt refused to answer questions from plaintiff's attorney concerning statements made by the defendant Fields about the plaintiff, about the interview at which such statements were made and about further statements made by defendant Fields regarding the lawsuits which gave rise to the instant case. On this basis, the motion to compel discovery was filed by the plaintiff.

■ Mr. Prevatt opposes the motion on the ground that requiring him to attend the deposition and produce unpublished as well as published documents received or developed by him in the course of his duties as a reporter necessarily has a "chilling effect" upon his functioning as a reporter and upon the flow of information to the general public in violation of the First and Fourteenth Amendments. This Court agrees.

■ The issue raised is whether the First Amendment prevents compulsory disclosure in *civil* litigation of materials developed in preparation of a newspaper article. This Court concludes that the paramount interest served by the unrestricted flow of public information protected by the First Amendment outweighs the subordinate interest served by the liberal discovery provisions embodied in the Federal Rules of Civil Procedure.

■ Analysis in this area must necessarily begin with the axiomatic principle that the First Amendment occupies a preferred position among the individual rights conferred by the Constitution and that any infringements thereon are closely scrutinized and strictly limited. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); reh. den. 404 U.S. 876, 92 S.Ct. 26, 30 L.Ed.2d 124; Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); reh. den. sub nom. Prince v. City and County of San Francisco, 358 U.S. 860, 79 S.Ct. 13, 3 L.Ed.2d 95. The concept of freedom of the press as guaranteed by the First Amendment is the keystone of our constitutional democracy and is broad enough to include virtually all activities for the press to fulfill its First Amendment functions. Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Bridges v. California, 314 U.S. 252, 263, 62 S.Ct. 190, 86 L.Ed. 192 (1941). Only a "compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 341, 9 L.Ed.2d 405 (1963); Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 546, 83 S.Ct. 889, 9 L.Ed.2d

929 (1963); De Gregory v. Attorney General of New Hampshire, 383 U.S. 825, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966); Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); Louisiana ex rel. Gremillion v. NAACP, 366 U.S. 293, 296, 297, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961). Any justifiable infringement upon First Amendment rights must be no greater than is necessary to vindicate legitimate subordinating interests. In re Stolar, 401 U. S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971); United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); reh. den. 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188; Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

In Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), in which the Supreme Court held that a newspaper reporter may be required to respond to a grand jury subpoena relevant to a *criminal* investigation, the majority recognized, nevertheless, that news gathering "qualifies" for First Amendment protection and that "without some protection for seeking out the news, freedom of the press could be eviscerated." 408 U.S., *supra*, at 681, 92 S. Ct. at 2656. Further, the Court in describing what was not involved therein, stated: "No attempt is made to require the press to publish its sources of information or indiscriminately to disclose them on request." 408 U.S., *supra*, at 682, 92 S.Ct. at 2657. In Mr. Justice Powell's concurring opinion, he emphasized "the limited nature of the Court's holding." 408 U.S., *supra*, at 709, 92 S. Ct. at 2671.

This Court has neither been cited nor has found any subsequent case which has extended the Branzburg case holding beyond the limited confines of the criminal justice system. See also In re Bridge, 120 N.J.Super. 460, 295 A.2d 3 (1972). In Baker v. F & F Investment, 470 F.2d 778 (2d Cir. 1972), the Court of Appeals for the Second Circuit held, in a civil rights case, that a journalist could not be required to disclose his re-source materials for a magazine article which he had authorized and published. The Court rejected the notion that the wide open discovery provisions of the Federal Rules of Civil Procedure justified disclosure:

As against these significant public and private interests, appellants urge us to consider the overriding importance of compelling testimony in judicial proceedings [citing cases]. This federal policy is particularly strong, we are told, when the issue involves enforcement of federal laws in federal courts, and is even more trenchant when the case involves claims under various provisions of the civil rights acts.

This argument, we believe, goes too far, for it would require disclosure of confidential sources in every case based upon federal question jurisdiction or, at least, in every case raising a claim under the civil rights acts. *We can see no justification for either a blanket rule covering all federal question cases, or for a partial rule of disclosure for all civil rights actions.* It would be inappropriate for a court to pick and choose in such a gross fashion between different acts of Congressional legislation, labelling one "exceedingly important" and another less so, without specific directions from the Legislature. *While we recognize that there are cases—few in number to be sure—where First Amendment rights must yield, we are still mindful of the preferred position which the First Amendment occupies in the pantheon of freedoms.* Accordingly, though a journalist's right to protect confidential sources may not take precedence over that rare overriding and compelling interest, *we are of the view that there are circumstances, at the very least in civil cases, in which the public interest in non-disclosure of a journalist's confidential sources outweighs the public and private interest in compelled testimony.* The case before us is one

where the First Amendment protection does not yield.

470 F.2d at 782–783 (emphasis added).

In United States v. Liddy, 354 F.Supp. 208 (D.D.C.1972), Judge Sirica, who required a newspaper to produce evidentiary material in its possession relevant to a *criminal trial* arising out of the infamous "Watergate" burglary, stated with respect to the *Baker* case:

> . . . In context, it appears that Judge Kaufman distinguishes *Branzburg* as being concerned principally with the criminal justice system as opposed to civil litigation such as *F & F Investment*. The distinction is not drawn along the lines of grand jury —non-grand jury cases. Judge Kaufman observed that, "[i]f, as Mr. Justice Powell noted in that case, [*Branzburg*] instances will arise in which First Amendment values outweigh the duty of a journalist to testify even in the context of a criminal investigation, surely in *civil* cases, courts must recognize that the public interest in non-disclosure of journalist's news sources will often be weightier than the private interest in compelled disclosure." . . . *The Court agrees that First Amendment values will weigh differently in civil and criminal actions.* The Court sees little relevance in *civil* decisions to situations such as the one now before it.

354 F.Supp. at 213, n. 14 (emphasis added).

This line of reasoning has been held to apply even where the truth of the matter published was placed directly in controversy. Cervantes v. Time, Inc., 464 F.2d 986 (8th Cir. 1972). *Cervantes* involved a libel action against the publishers of *Life* magazine in which an article appeared, accusing the plaintiff, as Mayor of St. Louis, of direct personal ties with notorious underworld figures. The defendants raised the defenses of truth and constitutional privilege. The Court held that the libel defendants' refusal to reveal the identity of its news sources did not bar the entry of a summary judgment in their favor. The Court of Appeals stated therein as follows:

> . . . Similarly, to compel a newsman to breach a confidential relationship merely because a libel suit has been filed against him would seem inevitably to lead to an excessive restraint on the scope of legitimate newsgathering activity.

464 F.2d at 993, n. 10.

■ The foregoing analysis is directly applicable to the instant case. The plaintiff has shown no "compelling" reason for this Court to countermand the lofty principles embodied in the First Amendment. He has not even demonstrated that the information sought could not be gleaned from other sources such as interrogatories directed to or depositions of the defendants themselves. In Democratic National Committee v. McCord, 356 F.Supp. 1394 (D.D.C.1973), subpoenas were issued on behalf of the Committee for the Re-election of the President and others to reporters for the New York Times, the Washington Post, the Washington Star-News, and Time Magazine commanding their appearance and the production, at a deposition, of all documents, papers, letters, photographs, audio and video tapes relating in any way to the Watergate "break-in" or other political espionage operations against the Democratic National Committee. The Court held, quashing the subpoenas, that, *absent a showing that alternative sources of evidence had been exhausted or even approached* or a positive demonstration of the materiality of the documents and other materials, the reporters were entitled to a qualified privilege under the First Amendment. The Court agreed with Judge Sirica that considerations in civil discovery are vastly different from those in the criminal context and that "First Amendment values will weigh differently." 356 F.Supp., *supra,* at 1398.

The plaintiff contends, however, that no confidential source is involved in this case since the newspaper article itself

quotes defendant Fields as the source of the statements made about plaintiff Loadholtz and the prior suit against Loadholtz giving rise to plaintiff's cause of action. This distinction is utterly irrelevant to the "chilling effect" that the enforcement of these subpoenas would have on the flow of information to the press and to the public. The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants.

In sum, then, the plaintiff has advanced no "compelling interest" to justify the compelled disclosure of any information that formed the basis for Mr. Prevatt's article. To this extent, this Court agrees with Judge Richey in the *McCord* case, *supra,* that a journalist is entitled to at least a qualified First Amendment privilege. Alternatively, this Court exercises its broad discretion in limiting discovery in a civil case. Baker v. F & F Investment, *supra,* 470 F.2d at 781.

Therefore, it is

Ordered:

The motion to compel discovery, filed herein October 25, 1974, is hereby denied.